In re **MUTUAL LIFE INSURANCE COMPANY OF NEW YORK PREMIUM LITIGATION.**

**William J. McLean, Naomi Driscoll and Roger K. Brown and Thomas C. Brown, Trustees of the Richard L. Brown Irrevocable Trust No. 2, DTD 3/17/90, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Mutual Life Insurance Co. of New York f/k/a Mutual Life Insurance Company of New York, Defendant.**

No. CIV.A. 96–10411–EFH.

United States District Court, D. Massachusetts.

Nov. 17, 2003.

Barry A. Weprin, Milberg, Weiss, Bershad Specthrie & Lerach, New York City, Kenneth G. Gilman, Peter A. Lagorio, Gilman and Pastor, LLP, Saugus, MA, Richard T. Phillips, Smith, Phillips, Mitchell, Scott & Rutherford, Batesville, MS, for William J. McLean, Individually and on behalf of all others Similarly Situated, Plaintiff.

Daniel J. Gleason, John A. Sten, Boston, MA, Nutter, McClennen & Fish, LLP, Glenn E. Deegan, Holland & Knight, LLP,

for Mutual Life Insurance CO of New York, Defendant.

### *MEMORANDUM AND ORDER*

HARRINGTON, Senior District Judge.

The plaintiffs in this case are two Massachusetts residents, William McLean ("McLean") and Naomi Driscoll ("Driscoll"), and two Illinois residents, Roger Brown and Thomas Brown, who are acting in their capacity as trustees for the Richard L. Brown Irrevocable Trust Number 2 ("the Browns"). The plaintiffs' complaint alleges that the defendant, MONY Life Insurance Company ("MONY"), used false and misleading sales presentations to sell the plaintiffs "vanishing premium" life insurance policies in violation of Massachusetts and Illinois state consumer protection statutes. The defendant moved for summary judgment as to both sets of plaintiffs. For reasons stated below, the Court grants the motion as to McLean and Driscoll, but denies the motion as to the Browns.

### I. *BACKGROUND*

#### A. *McLean and Driscoll*

In 1995, Paul Goshen ("Goshen") filed a class action lawsuit against MONY in New York state court alleging deceptive sales practices in connection with the sale of "vanishing premium" life insurance policies. McLean and Driscoll purchased MONY life insurance policies in Massachusetts and joined Goshen's class action lawsuit. Goshen's complaint alleged a number of common law and statutory violations, but only his claim under New York's Consumer Protection Act, Gen. Bus. § 349, is relevant to the current case.

MONY moved for summary judgment on all of Goshen's claims. The New York trial court granted the motion. Regarding the Section 349 claim, the trial court held

as an initial matter that the statute applied "only to those claims which arose out of transactions occurring in New York State, and so may not be raised in favor of any plaintiff who claims to have been injured by the purchase of insurance in any other jurisdiction." *Goshen v. The Mutual Life Ins. Co. of N.Y.,* 1997 WL 710669 at *13 (N.Y.Sup.1997). As for those plaintiffs who purchased their policies in New York, the trial court ruled that the plaintiffs had failed to allege conduct by the defendant that was materially deceptive, as required by the statute. *Id.* Accordingly, judgment was entered dismissing the complaint "*in its entirety with prejudice on the merits.*" (emphasis supplied).

On appeal, the New York Appellate Division affirmed the trial court without opinion. *See Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598, 602 (1999). The case was then appealed to New York's highest court, the Court of Appeals, which affirmed in part and reversed in part. *See id.* The court held that the plaintiffs did in fact allege conduct that was materially deceptive under Section 349 and remanded that particular cause of action to the trial court "for further proceedings consistent with this opinion." *Id.,* 704 N.Y.S.2d 177, 725 N.E.2d at 608. In all other respects the trial court's decision was affirmed. On remand, the trial court repeated its earlier ruling that only plaintiffs who purchased their policies in the State of New York may raise claims under Section 349. The trial court concluded that "[s]ince there is no doubt that Goshen purchased his policy in Florida, his claim must be dismissed."

The trial court's decision dismissing Goshen's Section 349 claim was again appealed to, and affirmed by, the Appellate Division. Appeal was taken to the Court of Appeals, which held that a prima facie case under Section 349 requires "that the

transaction in which the consumer is deceived must occur in New York." *Goshen v. Mutual Life Ins. Co. of N.Y.,* 98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190, 1195 (2002). Applying this rule to the case before it, the Court of Appeals concluded that Goshen's purchase of insurance in Florida meant that he did "not state any cognizable cause of action." *Id.,* 746 N.Y.S.2d 858, 774 N.E.2d at 1196. The trial court's ruling was affirmed.

Shortly after Goshen filed his complaint in New York state court, other individuals in different jurisdictions brought similar actions against MONY. These cases were eventually coordinated and transferred to this Court as part of a Multi–District Litigation Panel Order. One of these cases was originally filed by McLean in this Court on March 7, 1996. McLean's case, like all the other Multi–District Litigation cases, was stayed pending the outcome of *Goshen.* Shortly after the final decision by the New York Court of Appeals in *Goshen,* the stay was lifted and McLean moved to amend his complaint. McLean sought to drop all of the claims contained in his original complaint and add a claim under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, and a second Massachusetts plaintiff, Driscoll. McLean also sought to add the Illinois plaintiffs, the Browns, and their claim under the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 Ill. Comp. Stat. 505/1 ("ICFA"). This Court granted McLean's motion to amend his complaint.

### B. *The Browns*

In 1990, the Browns purchased a $2 million "vanishing premium" life insurance policy from MONY in Illinois. The Browns allege that the MONY sales agent made representations and used illustrations during the sales presentation that showed that the insurance policy could be purchased for five annual premiums of $44,000 each. The insurance policy purchased by the Browns yielded investment income in the form of dividends. The dividends were to be used to pay for the policy's premiums, thus allowing the Browns' out-of-pocket payments to "vanish" over time. In 1992, the Browns' were informed by a MONY sales agent that "things hadn't gone as well as expected," and an additional three years of premiums were required. Richard Brown testified at his deposition that these three additional annual payments were $16,000 each. In March, 1995, the Browns received a letter from MONY indicating that annual premiums of $18,477 were required for at least sixteen more years.

The Browns decided to bring suit. Unlike McLean and Driscoll, however, the Browns decided to opt out of the *Goshen* class action that was filed in New York. Instead, in January, 1996, the Browns joined a class action lawsuit against MONY that was filed in federal district court in Mississippi. That case was ultimately transferred to this Court as part of the Multi–District Litigation Panel Order. The Browns then dropped out of the Mississippi class action and joined McLean's action, raising only one claim under the ICFA.

## II. *DISCUSSION*

Currently pending before this Court is MONY's motion for summary judgment on McLean's amended complaint. Summary judgment should be granted when the evidence, taken in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Rocafort v. IBM Corp.,* 334 F.3d 115, 119 (1st Cir.2003).

### A. *McLean and Driscoll*

■ MONY argues that summary judgment should be granted as to McLean and Driscoll because the doctrine of res judicata precludes their 93A claim. "In cases involving preclusion, federal statutory law requires federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Patterson v. Patterson*, 306 F.3d 1156, 1158 (1st Cir.2002) (quotation marks and citation omitted). In this case, MONY argues that *Goshen* bars the claims brought by McLean and Driscoll. The Court rules that New York's res judicata law controls. *See N.H. Motor Transp. Ass'n. v. Town of Plaistow*, 67 F.3d 326, 328 (1st Cir.1995).

■ Under New York law, the doctrine of res judicata precludes future litigation between the same parties on the same claims once a final judgment is entered. *See Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir.1997). Two claims are considered the same if they arise from "the same transaction or series of transactions . . . even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158, 1159 (1981). This means that parties are precluded from raising not only issues actually litigated before a court but also those issues which could have been litigated. *See In re Hofmann*, 287 A.D.2d 119, 733 N.Y.S.2d 168, 172 (App.Div.2001).

■ McLean and Driscoll concede that they were parties to *Goshen* because they elected to join the class. *See Siegel v. Competition Imports, Inc.*, 296 A.D.2d 540, 745 N.Y.S.2d 701, 702 (App.Div.2002). McLean and Driscoll also concede that their claims in *Goshen* are based on the same factual transactions as their current claim, namely their purchase of "vanishing premium" life insurance policies from MONY.

The primary challenge they make to the applicability of res judicata is that the decisions of the various courts in *Goshen* did not amount to a final judgment. McLean and Driscoll argue that the *Goshen* decisions did not adjudicate the substance of the Section 349 claims brought by plaintiffs who purchased policies outside New York, and therefore it would be unfair to preclude the 93A claims in the current action. McLean and Driscoll further argue that the decisions of the New York courts in *Goshen* were procedural in nature and based on the theory that the plaintiff lacked standing to bring a claim under Section 349.

All of these arguments are without merit. The trial court in *Goshen* ruled that only individuals who purchased their insurance policies in New York could bring a claim under Section 349. The trial court granted the defendant's motion for summary judgment and an order was entered dismissing Goshen's complaint "in its entirety with prejudice on the merits." The grant of summary judgment was appealed and the case was remanded on other grounds. On remand, the trial court again dismissed Goshen's Section 349 claim because he did not purchase his policy in New York. The New York Court of Appeals affirmed this ruling. *See Goshen*, 746 N.Y.S.2d 858, 774 N.E.2d at 1196. It is clear that under New York law, a grant of summary judgment that is affirmed by the state's highest court is a final judgment for purposes of res judicata. *See Collins v. Bertram Yacht Corp.*, 42 N.Y.2d 1033, 399 N.Y.S.2d 202, 369 N.E.2d 758, 759 (1977); *Vinci v. Northside P'ship*, 250 A.D.2d 965, 672 N.Y.S.2d 935, 936 (App. Div.1998).

Contrary to McLean's and Driscoll's argument, the Court of Appeals did not base its decision on standing or procedural grounds. The court's discussion is clear

that the territorial reach of Section 349 is part of a "prima facie" case under the statute. *Goshen,* 746 N.Y.S.2d 858, 774 N.E.2d at 1195. Because the plaintiff could not show that the alleged deception took place in New York, the Court of Appeals concluded that his "complaint does not state any cognizable cause of action." *Id.,* 746 N.Y.S.2d 858, 774 N.E.2d at 1196. There is no discussion whatsoever in the Court of Appeals decision regarding standing.

It is true that the New York courts never reached the substance of Goshen's consumer protection claims under Section 349. But that fact does not defeat res judicata. The Second Circuit has explained that under New York's res judicata law, "judgments not passing directly on the substance of the claim have come to operate as a bar and thus the use of the locution 'on the merits' has possibly misleading connotations." *EFCO Corp. v. U.W. Marx, Inc.,* 124 F.3d 394, 398 (2d Cir.1997) (quoting *Restatement (Second) of Judgments* § 19 cmt. a); *see also Smith v. Russell Sage Coll.,* 54 N.Y.2d 185, 445 N.Y.S.2d 68, 429 N.E.2d 746, 750 (1981). In other words, New York courts do not necessarily need to reach the substance of a claim in order for a decision to be considered a final judgment for purposes of res judicata. *See e.g., Cold Spring Harbor Area Civic Ass'n, Inc. v. Bd. of Zoning Appeals of Town of Huntington,* 305 A.D.2d 444, 762 N.Y.S.2d 392, 393 (App. Div.2003) ("A dismissal on statute of limitations grounds is considered a dismissal

on the merits for claim preclusion purposes and bars a second action.").

The critical point is that McLean and Driscoll could have brought their 93A claims in the *Goshen* action. *See Beck v. E. Mut. Ins. Co.,* 295 A.D.2d 740, 744 N.Y.S.2d 57, 58 (App.Div.2002). They elected not to do so. The final judgment entered by the New York trial court and affirmed by the New York Court of Appeals means that the doctrine of res judicata precludes them from bringing those claims now.[1] The defendant's motion for summary judgment regarding McLean and Driscoll is granted.

## B. *The Browns*

It should be noted at the outset that, unlike McLean and Driscoll, the Browns are not bound by *Goshen.* The Browns opted out of the *Goshen* class and therefore were not parties to that action. Accordingly, MONY's motion for summary judgment as to the Browns is not based on res judicata. Instead, MONY claims that the Browns have failed to offer sufficient evidence that the ICFA was violated because "caveat language" contained in the insurance policy and illustrations contradict the Browns' allegations of deceptive practices. In addition, MONY argues that the Browns' claim is barred by the statute of limitations.

■ This Court turns first to the sufficiency of the evidence. To establish a claim under the ICFA, a plaintiff must

---

1. McLean and Driscoll raise one final argument that can be quickly addressed. The plaintiffs claim that they cannot be bound by *Goshen* because the class notice they received was inadequate. The notice was allegedly defective because it failed to warn absent class members that New York courts could rule against them regarding § 349. At oral argument, however, the plaintiffs conceded that the class notice in *Goshen* was in con-

formity with Due Process requirements. In addition, the notice specifically stated that "[i]f you are a member of the Class, you will be bound by any judgment in the Action, whether favorable or unfavorable." It is also noteworthy that McLean and Driscoll never objected to the class notice at any time during the seven years of the *Goshen* litigation. This Court therefore rules the plaintiffs' arguments regarding class notice to be without merit.

produce evidence that (1) the defendant engaged in a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *See Cripe v. Leiter*, 184 Ill.2d 185, 234 Ill.Dec. 488, 703 N.E.2d 100, 103 (1998). At issue in this case is the first prong of the analysis. The crux of MONY's argument is that under Illinois law an act or practice cannot be deceptive if the alleged misrepresentation at issue is contradicted by the express terms of an insurance policy or sales illustrations. According to MONY, the only alleged deceptive act at issue in this case is that MONY sales agents represented to the Browns that they would have to pay premiums for five years. MONY claims that both the insurance policy and the illustrations contained caveat language that put the Browns on notice that there was a possibility that dividends could fall below projected amounts and that more than five years of premiums would be required. For example, one of these caveats stated that "if dividends fall below the illustrated values then the non-guaranteed values shown will not be achieved ... and premium payments will be required for a longer period of time than illustrated...." MONY also points to the deposition testimony of Richard Brown who admitted that he understood when he purchased the policy that there was a possibility that dividends could fall and additional premiums could be necessary.

■ MONY's characterization of the Browns' complaint is not entirely accurate. The Browns do indeed allege that the MONY sales agent represented that only five years of premiums were required. But that is not the only allegation in the complaint. The Browns also allege that the illustrations were fraudulent because they were artificially enhanced by a variety of manipulative accounting practices. The Browns further allege that MONY's sales agent misrepresented the likelihood that the dividends would decrease. According to the Browns, the agent's statements and the fraudulent illustrations indicated that there was a very low chance that dividends would decline, when in fact MONY knew that its investment decisions created a very high chance that dividends would not achieve their targeted results. The caveat language MONY cites in the policy and illustrations does not address this issue. The caveat language only addresses the fact there was a possibility that dividends could decrease and premiums could increase. The caveat language did not inform the Browns that the illustrations were artificially inflated. The caveat language did not inform the Browns about whether the possibility of premium increases was likely or unlikely. In short, the caveat language MONY relies on does not necessarily contradict the Browns' allegations in the first instance.

■ Even if the caveat language did contradict the Browns' allegations, Illinois does not have a firm rule that no cause of action exists under the ICFA if the express terms of a contract are at odds with the alleged deceptive practice. Whether an act or practice is deceptive or unfair under the ICFA is a question that is determined on a case-by-case basis. *See Scott v. Ass'n for Childbirth at Home. Int'l.*, 88 Ill.2d 279, 58 Ill.Dec. 761, 430 N.E.2d 1012, 1018 (1981). Not surprisingly, Illinois courts have found practices to be deceptive even when a contract is to the contrary. *See Siegel v. Levy Org. Dev. Co., Inc.*, 153 Ill.2d 534, 180 Ill.Dec. 300, 607 N.E.2d 194, 199 (1992) (deceptive practices found when purchase agreement expressly contradicted sales brochure and oral statements made during sales presentation). Even in cases where Illinois courts have dismissed

a case because a contract contradicts claims of deceptive practices, the language of the contract is only one piece of evidence used to determine whether a deceptive practice exists. *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 963–64 (2002) (finding no deception in part because of express terms in the lease, but also because plaintiff made "bare allegations" and failed to offer "specific and particular pleading[s] sufficient to aver a violation" of the ICFA). Simply put, the bright-line rule that MONY urges upon this Court does not exist under Illinois law.

As the Seventh Circuit has explained, Illinois courts determine if acts or practices are deceptive by examining whether the statements at issue created a likelihood of deception or had the capacity to deceive. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir.2001). "What is required is a showing that the acts and practices were capable of being interpreted in a misleading way." *Harwood v. Piser Mem'l Chapels*, 102 Ill.App.3d 514, 58 Ill.Dec. 521, 430 N.E.2d 553, 555 (1981). This is a factual question that is best left for the jury. *See Abt v. Mazda Am. Credit*, 25 F.Supp.2d 860, 865 (N.D.Ill.1998) ("Whether a party's conduct violates the Consumer Fraud Act is a question[ ] of fact to be determined by the trier of fact."); *Kedziora v. Citicorp Nat'l Serv., Inc.*, 780 F.Supp. 516, 534 (N.D.Ill.1991) (same); *People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill.2d 1, 165 Ill.Dec. 655, 585 N.E.2d 51, 66 (1991) (same); *Malooley v. Alice*, 251 Ill.App.3d 51, 190 Ill.Dec. 396, 621 N.E.2d 265, 268 (1993) (same). The allegations contained in the Browns' complaint regarding the manipulative nature of the illustrations and sales presentation are detailed and extensive. At this stage of the litigation, MONY has failed to show that there is no genuine issue of material fact as to these alleged deceptive practices.

MONY's next argument is that the Browns' claim is barred by the statute of limitations. The ICFA contains a three-year statute of limitations which begins to run "when the plaintiff knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Bradley v. Alpine Constr. Co.*, 224 Ill.App.3d 432, 166 Ill.Dec. 695, 586 N.E.2d 653, 655 (1991); *see also* 815 Ill. Comp. Stat. 505/10a(e). The burden is on the Browns to set forth sufficient facts to avoid the statute of limitations. *See Sommer v. United Sav. Life Ins. Co.*, 128 Ill.App.3d 808, 84 Ill.Dec. 77, 471 N.E.2d 606, 615 (1984). The Browns claim that a reasonable person should have known of an injury in 1995 when MONY sent the Browns a letter informing them that additional premiums of $18,477 annually were required for at least sixteen more years. MONY responds that the alleged injury should have become apparent when the Browns purchased the policy in 1990 or, alternatively, in 1992 when a MONY agent told the Browns that "things hadn't gone as well as expected," and an additional three years of premiums were required.

MONY calls this Court's attention to *In re The Northwestern Mutual Life Ins. Co. Sales Practices Litigation*, 70 F.Supp.2d 466, 485 (D.N.J.1999), in which the court held that the statute of limitations prohibited a plaintiff's ICFA claim because the plaintiff was on notice at the time he purchased his policy or during any number of subsequent years that he had been wrongfully injured. The court's decision was based in large part on the fact that the plaintiff "was practically deluged with documents" that contradicted the alleged misrepresentations by the defendant. *Id.* These documents included approximately 70 notices over a ten-year period, all of

which "were concededly at odds with the alleged oral promise" of the defendant. *Id.* These facts contrast sharply with those of the present case. As already explained, the caveat language at issue here was not necessarily at odds with the alleged misrepresentations. In addition, the Browns were not deluged with documents over a ten-year period.

Viewing the evidence in the light most favorable to the Browns, and drawing all reasonable inferences in their favor, this Court rules that a reasonable person should have known in 1995 that he suffered an injury of the type alleged in the complaint. No reasonable person would have known of the injury in 1990 when the policy was purchased. This is particularly true given the factual allegation that the illustrations themselves were artificially enhanced by a variety of manipulative accounting practices. In addition, the MONY sales agent's statement in 1992 demanding *three* additional years of payments is significantly different in cost and duration than MONY's 1995 letter demanding $18,477 annually for at least *sixteen* additional years. A reasonable person who is deceived into believing, as the Browns allege they were, that there was a small likelihood of future premium increases would not necessarily be on notice of the deception if only a small number of premium increases were demanded. This is true because a small number of increases is not necessarily inconsistent with the Brown's view that there was a small chance that additional premiums would be required. On the other hand, MONY's demand for sixteen years of additional premiums would signify to a reasonable person that, contrary to MONY's alleged representations during the sales presentation, there was a very high chance that additional premiums would be required. Given the large discrepancies between the 1992

and 1995 demands for additional payments, this Court rules that the statute of limitations does not bar the Browns' claim because a reasonable person would have known that he was wrongfully injured in 1995. The Browns' 1996 complaint in federal district court in Mississippi was therefore timely. MONY's motion for summary judgment as to the Browns is denied.

## III. *CONCLUSION*

MONY's motion for summary judgment is granted as to McLean and Driscoll because the doctrine of res judicata precludes their claims under 93A. MONY's motion for summary judgment is denied as to the Browns. The Browns have alleged sufficient evidence of deceptive practices under the ICFA and their claim is not barred by the statute of limitations.

SO ORDERED.